[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISIONON DEFENDANTS' MOTION TO STRIKE
On November 26, 1993, the plaintiffs, Cameron Cherry and David Sfara as co-administrators for the estate of Carol Bennett, and Hollis Bennett through his custodian Cameron Cherry, filed a four count complaint against the defendants, ABF Freight Systems ("ABF") and John Paduhovich. In the complaint the plaintiffs allege recklessness in count one, loss of consortium in count two, CT Page 6239 negligence in count three and another loss of consortium claim in count four. The complaint arises out of a collision between the decedent, Carol Bennett and the defendant Paduhovich, when the truck Paduhovich was operating, which was owned by his employer ABF, struck the rear of the vehicle operated by Bennett resulting in Bennett's death. The prayer for relief seeks damages and "additional money damages as are proper, including but not limited to, . . . damages pursuant to General Statutes § 14-295 and General Statutes § 30-102 et seq."
On February 24, 1994, the defendants filed a motion to strike counts one, two and four of the plaintiffs' complaint and the double or treble damages in the prayer for relief. The defendants' motion was accompanied by a supporting memorandum of law. The plaintiffs filed a memorandum in opposition to the motion to strike on March 30, 1994. On May 9, 1994, the Court heard oral argument on the motion at short calendar.
LEGAL DISCUSSION
The purpose of a motion to strike is to test the legal sufficiency of a pleading. Ferryman v. Groton, 212 Conn. 138, 142,561 A.2d 432 (1989). The court may consider only the grounds raised in the motion to strike. Blancato v. Feldspar Corporation,203 Conn. 34, 44, 522 A.2d 1235 (1987). A motion to strike "admits all facts well pleaded; it does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings." Mingachosv. CBS, Inc., 196 Conn. 91, 108, 491 A.2d 368 (1985). "In deciding upon a motion to strike, a trial court must take the facts to be those alleged in the [pleadings], . . . and `cannot be aided by the assumption of any facts not therein alleged.'" (Citations omitted.)Liljedahl Bros., Inc. v. Grigsby, 215 Conn. 345, 348, 576 A.2d 149
(1990). "In ruling on . . . a motion to strike [the court has an] obligation to take the facts to be those alleged in the [pleadings] and to construe the [pleadings] in the manner most favorable to sustaining their legal sufficiency." Connecticut National Bank v.Douglas, 221 Conn. 530, 536, 606 A.2d 684 (1992).
A. Count One: Recklessness
In their memorandum in support of the motion to strike, the defendants argue that the first count of the complaint and its corresponding prayer for relief for double or treble damages pursuant to General Statutes § 14-295, are insufficient. They argue that it is not enough for the plaintiffs to allege that the CT Page 6240 defendants were reckless because they violated one of the enumerated sections of General Statutes § 14-295. The defendants argue that the plaintiffs must allege the specific conduct which constitutes recklessness. The defendants further argue that the plaintiffs' allegations are essentially the same as what is alleged in count three, which sounds in negligence. They argue that negligence cannot be transformed into recklessness simply by adding the word reckless.
In its memorandum in opposition to the motion to strike, the plaintiffs argue that they have complied with General Statutes § 14-295 and that their allegations are sufficient to support their prayer for related damages.
General Statutes § 14-295 states in relevant part:
 In any action to recover damages resulting from personal injury, wrongful death or damage to property, the trier of fact may award double or treble damages if the injured party has specifically pleaded that another party has deliberately or with reckless disregard operated a motor vehicle in violation of sections 14-218a, 14-219, 14-222, 14-227a, 14-230, 14-234, 14-237, 14-239
or 14-240a, and that such violation [violation] was a substantial factor in causing such injury, death or damage to property.
The plaintiffs allege in count one that:
 [t]he collision was caused by the conduct of defendant JOHN PADUHOVICH in that he deliberately or with reckless disregard of the consequences:
 a) operated the motor vehicle in a reckless manner in violation of Section 14-222 of the Connecticut General Statutes;
 b) operated the motor vehicle at an unreasonably fast rate of speed in violation of Section 14-218a of the Connecticut General Statutes; CT Page 6241
 c) failed to drive a reasonable distance apart in violation of Connecticut General Statutes 14-240a.
It is generally true that "[t]he reiteration of facts previously asserted to support a cause of action in negligence, without more, cannot be transformed into a claim of reckless misconduct by mere nomenclature." Brock v. Waldron, 127 Conn. 79,81, 14 A.2d 713 (1940). Superior Court decisions have ordered stricken a claim for double or treble damages under § 14-295 where there is no factual basis to support a cause of action for recklessness. See Lezotte v. Hanover Insurance Co., 8 CSCR 156
(January 6, 1993, Sylvester, J.).
In the present case, the count for recklessness precedes the count for negligence. The count for negligence repeats the allegations of the recklessness count and adds several other paragraphs. It is true that Count One and its corresponding prayer for relief contain the "barebones requirements" of General Statutes § 14-295 and there are no allegations of more specific conduct.
However, "[t]he cases cited by those courts as authority, . . . were dealing with common law actions; see, e.g., Dubay v. Irish,207 Conn. 518 (1988); and in those instances it is clearly necessary to plead a cause of action grounded in recklessness separate and distinct from a negligence action." Spencer v. King,8 CSCR 1024 (September 16, 1993, Higgins, J.). "General Statutes § 14-295, on the other hand, states explicitly [what must be alleged]." Id. "This statute does not require the same specificity of pleading which is required to support a cause of action predicated on [common law] recklessness. Id.; see alsoKnoblauch v. Atlantic Ventilating; 8 CSCR 1253 (October 22, 1993, Corradino, J.).
Here, since the plaintiffs have alleged in their complaint deliberate violations of General Statutes § 14-222, § 14-218a and § 14-240a, the plaintiffs' allegations comport with the requirements of General Statutes § 14-295. Therefore, the defendants' motion to strike count one and its related prayer for relief must be denied.
B. Counts Two and Four: Loss of Consortium
The defendants argue that Connecticut does not recognize an action for loss of filial consortium and cite Mahoney v. Lensink,17 Conn. App. 130, 55 A.2d 1088 (1988), as authority. CT Page 6242
The plaintiffs argue that some Superior Court decisions recognize this cause of action and that Mahoney does not hold that an action for loss of filial consortium is not cognizable. The plaintiffs argue that unlike Mahoney, where the parents alleged the loss of consortium of their child, in the present action a child is alleging the loss of consortium of the parent. The plaintiffs argue that the emerging public policy, which enhances and enlarges the rights of children, supports maintaining a child's action for loss of consortium of its parent.
"No appellate court case has yet addressed squarely the issue of whether, under any circumstances, a cause of action for the loss of filial consortium lies." Mahoney v. Lensink, supra, 141 n. 7.
 "[L]oss of consortium . . . `is a property-right growing out of the marriage relation and includes the exclusive right to the services of the spouse — and these contemplate not so much wages or reward earned as assistance and helpfulness in the relations of conjugal life according to their station — and the exclusive right to the society, companionship and conjugal affection of each other.' Valentine v. Pollak, 95 Conn. 556, 561, 111 A. 869." Maggay v. Nikitko, 117 Conn. 206, 208, 167 A. 816. The concrete inquiry is whether, under the present conception of the family relationship, a minor child's natural right to the love and affection of his mother should be accorded by the law the same protection as a husband's or wife's property right of consortium. . . . [t]he underlying problem is, in its last analysis, a sociological rather than a legal one; that a child has an interest in his parents' affection and company which the courts under our system of law have the power to `legalize' by recognizing a right of action for its protection; but that vital query is whether it is wise for the courts to exercise their power of lawmaking in this particular instance.
Taylor v. Keefe, 134 Conn. 156, 158, 56 A. 768 (1947). In Taylor v.Keefe, a minor child sued for the loss of consortium of his CT Page 6243 divorced mother when "the defendant by his arts, blandishments and seductions alienated her love and affection and destroyed the happiness of the plaintiff's home." Id., 157. The Supreme Court held that Connecticut did not recognize a claim of the loss of consortium of a parent by a child in those circumstances. Id. However, the facts of the present case are distinguishable fromTaylor as the loss of consortium arises out of an injury to and ultimate death of the parent.
The majority of the Superior Court decisions do not recognize a loss of consortium claim in the parent/child relationship. SeePenn v. Housing Authority, 11 Conn. L. Rptr. 485 (June 20, 1994, Fracasse, J.); Williams v. Picard, 8 CSCR 154 (January 7, 1993, Teller, J.); Reardon v. Middlesex Memorial Hospital,7 Conn. L. Rptr. 299 (October 5, 1992, Hendel, J.); O'Hazo v. Sousa,7 Conn. L. Rptr. 62 (August 3, 1992, Langenbach, J.). Some decisions distinguish a parent's claim from a child's claim and recognize a claim for loss of consortium asserted by the parent. See, e.g.,Sliney v. Denisanko, 8 CSCR 887 (September 13, 1993, Gordon, J.);Condron v. Pollak, 10 Conn. L. Rptr. 411 (January 17, 1994, Dean, J.). These decisions recognize the claim on the basis that the parents' interest in their children is a fundamental constitutional right. Id. The decisions analogize the legal contract of marriage to the constitutionally protected right of a parent to the "companionship, care, custody and management of his child." (Citations omitted.) Sliney v. Denisanko, supra.
Other courts have recognized a child's action for loss of consortium for his/her parent. Kizina v. Minier,5 Conn. L. Rptr. 481 (January 24, 1992, Santos, J.); Beckwith v. Akus,8 Conn. L. Rptr. 487 (April 12, 1993, Hurley, J.); Paradiso v. Nasinka,11 Conn. L. Rptr. 53 (March 21, 1994, Sullivan W., J.). These decisions recognize a child's right under the federal constitution as well as an increased awareness of a parent's necessary role in the nurturing of the minor child. Henderson v. Micciche,6 Conn. L. Rptr. 317 (May 1, 1992, Murray, J.). Indeed, allowing a child's action for loss of consortium has been deemed to be "compelled by the State's public policy to strengthen the family and to protect children from injury and neglect . . ." Id., 318.
As noted by Judge Santos, changes in the law concerning loss of consortium claims have "tracked changing economic conditions and the attendant changes in societal attitudes about the nature of the relationships implicated. The law involving the parent — child relationship, and the state's interest therein, has changed greatly CT Page 6244 since the child was viewed as merely another servant in the household of the paterfamilias." Kigina v. Minier, supra,5 Conn. L. Rptr. 483.
In the present case, this Court will follow the well reasoned rationales of those courts which have recognized a child's action for loss of consortium. The time has come for the courts to take action in support of the important public policies of protecting children and strengthening the family. Recognizing the rights of the child in loss of consortium claims is one step in that direction.
Accordingly, the defendant's motion to strike the loss of consortium claims contained in counts two and four of the complaint will be denied.
C. DAMAGES PURSUANT TO GENERAL STATUTES SECTION 30-102
The defendants have moved to strike from the complaint the plaintiffs' claim for damages pursuant to the Dram Shop Act, General Statutes, Section 30-102, et seq. The defendants are correct that the plaintiffs are not entitled to damages pursuant to the Dram Shop Act since they have not pleaded a cause of action thereunder. Thus, the motion to strike the plaintiffs' claim for damages pursuant to Section 30-102, et seq., of the Connecticut General Statutes will be granted.
CONCLUSION
Based on the foregoing, the defendants' Motion to Strike (#108) is denied, except as to the plaintiffs' claim for damages pursuant to the Dram Shop Act, Connecticut General Statutes, Section 30-102 et seq., which is granted.
So ordered.
Michael Hartmere, Judge CT Page 6245